This is a suit for damages growing out of an automobile accident which occurred on Eden Street in Plaquemine, Louisiana, at about 8:30 in the morning, on August 15, 1941. Eden Street is a continuation of the State highway leading into Plaquemine from the south. The damages claimed are for repairs made necessary to the plaintiff's automobile in the alleged sum of $137.47 and $100 for shock sustained by the plaintiff when, as he alleges, in the accident, his head was violently thrown against the windshield of his car.
The plaintiff's car, which was being driven by his son, John Lasseigne, Jr., was traveling north and was following the defendant's truck at a distance said to be from 40 to 50 feet. It is alleged in the petition that it was so following the truck, both vehicles traveling at a moderate rate of speed, estimated to be about 20 miles per hour, and that on reaching a point three blocks after entering the Town of Plaquemine, the defendant, who was driving his truck, without giving any warning or signal, applied his brakes suddenly, causing it to stop immediately in the path of plaintiff's car without giving the latter time either to stop or avoid running into the rear end of the truck.
The defense to the suit is a denial of the version of the accident as set out by the plaintiff in his petition and a countercharge that the accident was caused by the negligence of the plaintiff's son, the driver of his car in the following manner: Defendant was driving his truck north on Eden Street at a speed less than 20 miles per hour, and upon reaching a point about 75 feet within the block from the intersection of Eden and Lebauve Streets, at a moment when a car was approaching his truck from the opposite direction going south, plaintiff's car which was then running at a rate of about 35 miles per hour, following the truck, attempted to pass ahead of the truck, and on realizing that he could not do so, the driver darted back to his right and struck the truck on the left rear fender, breaking the tail light, damaging the gasoline tank and causing other damage, all of which, it is alleged, amounts to the sum of $75. Defendant then pleads in the alternative that even if there should be any negligence on his part, under the facts as just stated, there is shown to have been such contributory negligence on the part of the plaintiff's son as to bar plaintiff's recovery in this suit.
Assuming the position of a plaintiff in reconvention, the defendant then sets out the same state of facts charging plaintiff's son with the negligence which caused the *Page 541 
damage to his truck and prays for judgment in reconvention for the amount stated.
Upon trial of the case in the lower court, there was judgment, with written reasons assigned, in favor of the defendant, and against the plaintiff rejecting the latter's demand and dismissing his suit. The decree then states that: "Judgment is also rendered on the reconventional demand of Frank Calvaruso, the defendant in the main suit and plaintiff in reconvention, in favor of the defendant in reconvention and against the plaintiff in reconvention, dismissing the said reconventional demand." Apparently, from further reasons which appear, the court was of the opinion that the defendant's contention regarding the cause of and the liability for the accident was supported by the preponderance of the testimony but he had failed to prove his claim for damages with that certainty required by law. Assuming that was the conclusion reached by the trial judge, he should have non-suited the defendant on his reconventional demand instead of dismissing it as he did. All of that, however, need not concern us on this appeal which was taken by the plaintiff and which has not been answered by the defendant. In brief of counsel for defendant moreover, it is intimated that it was the intention to abandon the reconventional demand and that is why the appeal was not answered.
We have before us for consideration, therefore, a question of proof submitted by the plaintiff in support of his demand as against the proof adduced by the defendant, which, it is contended, either places the whole responsibility for the accident on the plaintiff's son or in the alternative shows such negligence on his part as would bar plaintiff's recovery.
The negligence of the defendant, under the plaintiff's contention, consists solely in his having made a sudden and abrupt stop in the middle of the street without giving any kind of signal of his intention to do so to the driver of plaintiff's car which was following him by some 40 feet. It seems not to be disputed that the two vehicles had been going along the highway for a considerable period of time south of Plaquemine, following each other at the same distance and each therefore going at approximately the same rate of speed. That being so, it would seem that the driver of the plaintiff's car was not following the truck too close, as is contended by the defendant, and that if the defendant did stop his truck suddenly, without giving any warning whatever, that is the reason the driver of the plaintiff's car was unable to stop before running into the rear end of the truck. In other words, there seems to have been nothing reckless about his driving either in the way of going too fast or in not maintaining a proper lookout. Plaintiff and his son both testify of course that the sudden stopping of the truck was what caused the accident and their testimony in this respect is corroborated by a witness by the name of LeRoy Newsom, who says he was standing in front of a filling station which he operated in the block just where the accident happened, and saw it all. There were two ladies, members of the Lasseigne family, in plaintiff's car with him and his son, but they were not called as witnesses to further corroborate that side of the case. It seems as though their testimony might have been of some assistance. No reason is given in the record for their failure to have testified. Counsel for plaintiff explain in their brief that they do not speak English but that is no reason why they could not have been called as witnesses and their testimony given through an interpreter.
Taking up now the defendant's side of the proof, we find that his version about the driver of the plaintiff's car attempting to pass ahead of the truck in face of the car approaching from the north is supported by the testimony of a witness named Arnold Berthelot and another named Tony Vitale.
Berthelot's testimony is that he was riding north on Eden Street on his bicycle about ready to make a left hand turn, when he saw what happened. He says that Lasseigne was going about 35 miles an hour and that the truck was going about 15 or 20 miles and that as the Lasseigne car was getting ready to pass the truck, the driver evidently saw the other car coming from the north so he dodged back on his right side of the street and hit the truck. He says that the car coming from the north had to take the shoulder of the street in order to safely pass the other car and the truck, but he is the only witness who claims to have seen that part of the accident. This witness says that he was about 20 feet from the truck when the accident happened, which we take to mean 20 feet south of it as he says he was about to make a left hand turn, which we also understand *Page 542 
was to be in Lebauve Street. The accident happened about 75 feet north of Lebauve Street and the point is made that it was impossible therefore for him to have seen the accident especially in such detail as he says he did.
The witness Vitale says he saw the accident from in front of the same filling station where Newsom says he was. This filling station is run in connection with a restaurant and Vitale states that he had stopped there to get a hamburger. He says that Newsom took his order and went into the restaurant part of the building to prepare the hamburger for him and that, of course, would have made it impossible for Newsom to have been in front of the filling station at the time he says he was and to have seen the accident. Obviously either one of these two witnesses stated something about their positions at the time which was not so. Either one of them may have seen the accident from the point they say they saw it but certainly both of them could not. Newsom says that he was standing there waiting for his wife to return in her automobile and that he was watching her because she was just learning how to drive and he was somewhat apprehensive about her. He says moreover that he never prepared hamburgers, that he merely took the order from Vitale and was going to wait for his wife to come back so that she could prepare it for him. Mrs. Newsom corroborates her husband on the point that he never made the hamburgers and that she always did so. All of this would seem to also corroborate Vitale's testimony that he did stop there and give an order for a hamburger, and leave to speculation the important point as to which of the two men may or may not have been standing in front of the station at the time the accident happened, and saw it.
The physical facts tend to show that the accident took place entirely on the right hand side of the street going north as the skid marks that were observed by some of the witnesses appeared on that side of the street. Counsel for plaintiff make the contention that these skid marks prove two things: First, that the collision had to take place on that side of the street and in that lane of travel; and second, that the truck came to a sudden and abrupt stop in front of the Lasseigne car. We believe that counsel are correct in their contention that these marks, being found on the east side of the street, would indicate that the impact took place on that side but we are not at all certain with regard to the proof adduced, that these marks were made by the truck. No witness who testified regarding them identified them as having been made by either one of the vehicles and therefore they may have been the skid marks of the Lasseigne car as well as those of the truck. For that reason we cannot attach as much importance to the proof concerning these skid marks as counsel for plaintiff would have us do.
From all of the conflict in the testimony we are left in serious doubt as to the way in which the accident did happen and we cannot agree with the trial judge in his conclusion that the defendant has supported his version of it by a preponderance of the testimony. Counsel for defendant, after making the usual observation about the trial judge having heard and seen the witnesses, has the frankness to further state that even though much of the evidence introduced by the plaintiff appears to be uncertain, he is "not unmindful that some of the defendant's evidence introduced may have been like-wise" and he therefore submits that plaintiff has failed to make out his case by that legal certainty which the law requires. Such frankness merits the serious consideration of the court and after having read the record and carefully considered the testimony, we have concluded that the court has not yet gotten the true facts in the case and is therefore unable to reach a fair and positive opinion as to who was responsible for the accident. Under such circumstances it follows that plaintiff has failed to prove his case by a fair preponderance of the testimony and for that reason he cannot recover.
Judgment affirmed at the costs of the plaintiff, appellant herein. *Page 543